May it please the court, my name is Sondra Eastwood and I represent Fernando Lopez and it is of course an honor to appear before you. I'm not here as a constitutional lawyer seeking to establish constitutional precedent. I am a criminal defense attorney and I was a former felony prosecutor for many years in Texas and I'm here asking of course that my client receives equal justice under the law. My client was convicted of possession of a firearm by a felon. Many are arguing at this time that under a new case of Bruin, perhaps that's not constitutional. That was not anything that was raised at the time of sentencing. He did plead guilty to it. I do note that this court was just recently came down and it seemed to indicate that the second amendment does not seem to, although it's applicable to all persons, perhaps for felons who have been convicted and have received the protections of criminal law, perhaps felon in possession is still appropriate under Bruhini. In that case it dealt with a civil court finding. My client was enhanced in a criminal proceeding although we would argue that he basically at sentencing did not receive the basic rights that every defendant should receive. He was enhanced stating that there was another felony, that another firearm was found and that that firearm was used in another felony involving an aggravated robbery and we would argue that the standard of preponderance of the evidence for an unadjudicated offense of aggravated robbery, first degree, 5 to 99 years in Texas, and although we objected saying that my client wished to remain silent and wanted to hold the government to its burden of proof beyond a reasonable doubt, the court still enhanced based upon preponderance of the evidence and the alleged victim in that case did not appear. So basically we're arguing that the government moved the goalpost and lowered the burden of proof at the time of sentencing, denied my client the right to remain silent and the right to have a jury trial for an unadjudicated offense before enhancing with a four level increase based upon the aggravated robbery and that's a large jump. It goes, you know, it adds four additional points which is approximately, I want to say, two more years for sentencing. But Texas robbery is a crime of violence under precedent, right? In other words, what case law do you have to support that that wasn't a proper basis for the enhancement? Yes, Your Honor. What I would argue is we're talking about the crime of violence with Texas robbery. Their boarding kind of touches upon that. That was involving reckless with ag assault in another state and it was saying that reckless should not apply. However, a dare from this court said that it should. However, if you look at the Texas robbery, there's all kinds of ways of committing the robbery. And what's interesting is that in Borden, which, you know, touched upon recklessness, they even use an example of a shoplifter saying that, for example, if a shoplifter fell off of a balcony and landed on a bystander causing bodily injury, although that wasn't planned, that that certainly would not be considered a crime of violence. But yet, under the Texas robbery statute, that was. Because in the course of committing theft, one of the definitions is or an immediate flight after the attempt. So in other words, under the Texas statute, that could possibly be applicable for robbery. And since this court uses the categorical approach, we would argue that robbery should not be considered a crime of violence to enhance to a 20 for felon in possession. Let's talk about the 2K2.1 enhancement, four levels for using a firearm in connection with another felon. You mentioned that in your opening remarks. So what we look at there, I think, if I understand it right, and you're going to correct me if not, we look at temporal proximity, which the district court in this case said was kind of problematic because it was about 15 months, 17 months from the incident that with which he was charged in this case. We also look at similarity and regularity. And there the district court found this is a similar offense, this are similar occurrence. This is a this is kind of a regular occurrence. It was two times, I guess, January of 21 and March of 21, 15 months and 17 months. So the question I've got is, first of all, do I have those three factors right? Second of all, we're reviewing for clear air, right? And third of all, if the court acknowledged that temporal proximity was a little stretched, how do we get around his findings that it was similar and regular? Yes. Yes, Your Honor. First of all, I think the key here and it goes back to the level that they had to prove was just preponderance of the evidence. And so it's a stretch. And we would argue that really there were no affirmative links and that, in fact, there wasn't any commonality. The first one, apparently they were investigating my client for narcotics violations and were, I guess, you know, following, surveilling him from early, I think, 2019 until he was busted in a traffic stop and the gun was found. He was the driver and he was with a female passenger in a Mercedes. I don't believe that there were any guns found at that time and it just sat and the 20, 21. They didn't find a gun on his person. They find they found a gun in his work truck and they failed to establish that he was the only one that operated this work truck, nor did they find any evidence of any other gun. And so, I think the fact that a robbery committed a few years, excuse me, a few months before the U.S. Marshals came and arrested him is related. And I don't see how that's related to a traffic stop where it's found on his person and they were investigating narcotics. Your Honor, again, what's interesting is that the affirmative links appeared to be for Christian Garcia, who in one, I guess, robbery, he was identified by the FBI. And then in the second one, the alleged victim, my client was never charged with any aggravated robbery or any robbery or any aggravated assault. And then in the second one that supposedly my client was involved with, they never presented any DNA evidence. And as we know, this type of weapon is a much heavier weapon. It's a .45 caliber. And so, if you were pounding someone over the head with a .45 caliber, certainly there would be some type of organic material or blood, whereas even on the 22, they found organic material and blood for the one that was found, I guess, the same day as that aggravated robbery with Christian Garcia. And he was charged. This gun that was in the work vehicle, there was no evidence of DNA, organic material, which there should have been if, in fact, this victim said that this happened. And also, the confrontation clause was violated because we weren't able to examine this alleged victim. We were not able to question, was he intoxicated at the time? Did he have bias? What was his criminal history? Was this self-defense? Any number of arguments. Also, with the PSR, something that's really of concern is that it seems to indicate that if you want to rebut what's stated in a PSR, you as the defense have to rebut this. Well, even on a Class C misdemeanor, which is only punishable by a fine in Texas, like for public intoxication, it still needs to be proven beyond a reasonable doubt, and there is no burden of proof on the defense. So, why is it that we need to rebut this and violate my client's right to remain silent for something that could be a first-degree felony, where he could potentially lose his acceptance points for just pleading guilty to felon in possession of a firearm, and even if he were to testify, face obstruction of justice, which would be another plus, too. So, probably not that many criminal defense attorneys would have their client testify, and it's a comment on his right to remain silent that they're saying that we must rebut this, Your Honor. Well, when the roommate, who was also his boss, said that it wasn't his gun in the truck, that it was your client's gun in the truck, were you able to cross-examine that testimony? No, Your Honor. We were not. We were not able to cross-examine, which even, again, in a Class C misdemeanor jury trial, we'd be able to cross-examine. And, ostensibly, this was hearsay, and it was offered for the truth of the matter asserted, and any statements probably were made to law enforcement, which goes along with Crawford, that certainly that should not be admissible. So, yes, we were not able to ask any questions of this alleged victim, including whether, in fact, it was his gun, and he perhaps had reasons to say it wasn't, especially if it was involved in some sort of offense. Also, I believe that there are probably millions of .45s that are sold. Many people have those. So, again, there's not an affirmative link, but it's not my client's responsibility to prove that he's innocent of this aggravated robbery. And then I also raised double counting, just that the robbery was used, it was enhanced to a 20, and then, in addition, it was used to add three more points to the criminal history, which added quite a bit more time to my client. And we would argue that that's also not fair to double count if it's being used to raise the base offense level in this offense. Well, if it's fair or not, it's the law. That's allowed. Yes, yes. I don't know why you're arguing fairness. Yes, right. We would still ask the court to possibly reconsider that. But, yes, definitely the Fifth Circuit. But probably our biggest concern is that it seemed that the burden of proof shifted to my client, and I know that . . . You've already said that four times, so we don't need to hear that again. Yes, I'm sorry. About the burden of proof. Yes. Okay. Anything else? You've saved time for rebuttal. Oh, thank you, Your Honor. Yes, no further arguments. Thank you. Thank you, Ms. Eastman. Okay. Wilson? So, how many Fifth Circuit arguments for you, Ms. Wilson? I don't know. Mr. Berry was usually our statistician, but a lot. Excuse me. May it please the Court, my name is Eileen Wilson, and I represent the government. Three of the four issues can easily be disposed of. Excuse me. Mr. Lopez's counsel previously conceded the robbery issue. The other two issues are fully backed by this Court's precedent. Turning to the enhancement, the district court . . . You're going to talk about same course of conduct and compensation for plans. Exactly. Unless you have questions about anything else. But the district court correctly applied this enhancement. The Court analyzed it under the course of conduct, which has three components or factors to it. Similarity, regularity, temporal proximity. You lose on temporal proximity, don't you? Well, the Court seemed to indicate it was problematic. There is a case out there that I cited in my brief. I'm not certain how to pronounce it, Fossapol, which was fourteen months. But remember, there is no statute of limitations. There is no bright line. I realize that if this Court . . . if we look at all the Court's precedents here, this is a bit of an outlier. Which means that the other two factors have to be usually strong. That's exactly right. And what we have here is . . . we have two components of evidence. One, we have the factual stipulation. And essentially all that gets us is the felon in possession, where he was stopped in the Mercedes and they discovered the Sig Sauer. Then we have the PSR. And that's the only evidence, none of which was rebutted. And that was based on an investigation by agents, the government, and what have you. Did the defendant object to the PSR in any way? Not to the facts, but the defendant preserved error. Okay. So the facts were unrebutted. But essentially, so what we have is two felon in possession cases. And these cases, unlike the drug cases, are simple in the sense of, did a felon have possession of a firearm? And the District Court recognized that as much. So you have this simplicity here. The regularity you have is you have a convicted felon who's in possession of a gun. Both times the guns are loaded. Both times they're stolen. And both times they're in a vehicle. Now, of course, the second time, the one that the feds arrested them on in March of 21, two months earlier he had assaulted, let's call him his former landlord, but he was living with the felon, victim two, whatever you want to call him. But as the PSR pointed out, the serial numbers were identical. So in January, when he assaulted his landlord or victim number two, it was the same gun that was found in the truck two months later. And the length here has something to do with the feds picking up the state case. Because what happened in October of 2019 is the states had the case. DPS arrested him. I don't know all the background about that. It doesn't matter, right? What we know is he was then indicted in December of 2020 for the federal offense of felon in possession. And then we know a few weeks or a week later or so Garcia stole that particular gun in another assault. And I'm not saying he was an accomplice in relation to, you know, that type of analysis from the first situation. So that's why I believe the district court looked at the course of conduct. So you have a gun possession offense, and this court has previously held that these possessions can constitute ongoing series of offenses. Whereas drug offenses are different, right? You may be selling, as in one of the cases, $5 of crack to somebody, and then months before you were a mid-level dealer. And felon . . . I'm sorry to interrupt you, but going along these same lines, how does time, I won't use temporal proximity because that's a factor, but how does time play into regularity and similarity? Because it seems to, or does it? Well, all of them are close in a sense, right? Especially similarity and regularity. But what this court has to do, what this court has to do is look at the district court, right? The district court deserves a certain amount of deference, if you will. Reviewing for clear error. Correct. So, I mean, I guess how does time play into a finding of similarity? In other words, the further out you get, is it less likely to be similar, or is time irrelevant with similarity? Well, I think that depends on the district court's analysis. And here you have somebody, a lot of the cases deal with before, like prior, uncharged conduct or uncharged, or even charged conduct and convictions, because you can use, of course, uncharged conduct. Here it's post. Here it's post, right. And we have a fellow who's also on bond at the time. And to a certain degree, right, it's a matter of luck whether you get pulled over or you not get pulled over. If the feds had taken the case earlier, if they'd executed the warrant earlier. But those things are out of my control or your control or what have you. I understand your sensitivity to that. But clearly the guidelines do see those as distinct analysis. Because the similarity doesn't look at time. It looks essentially at the elements of the offense, felon in possession with a firearm, any firearm. When I interrupted you, where you were going was drug offenses are not the same as firearm offenses. And under our precedent, firearm offenses, if you possess it and you possess it again, they're similar. I mean, I'm grossly paraphrasing, but I think that's where you were headed when I asked. Right. And any firearm means what it says. It doesn't mean identical firearms, as Lopez argued in his brief. And, in fact, Gonzales, the Gonzales court disavowed that it was finding that. And in Reed, the court, I believe it was Reed, the court specifically said it could be different guns. And it makes sense, too. I think it could be different cars or different. Right. But it makes sense. If you're a felon in possession and you're pulled over, they're going to take the gun. So if it had to be the same gun, how could you have the, you know, you can't commit another felon in possession offense in relation to that particular gun. So in any event, any firearm clearly is unambiguous. And the guidelines just explain what it is. Excuse me. The other thing I think, as Judge Wilson pointed out, or maybe it was Judge Smith, if one is weak or doesn't exist, one of those three elements, the other two can overcome it. And not once, but twice here, the district court said overall that the court found that it was relevant conduct based on all of the evidence. I think our law says it has to be authoritatively present, the other two. Right. I mean, it's a weighing, right? It's a weighing factor. And the district court essentially weighed it. There's not law that says you have to have X number of boxes checked. It just says it has to be stronger. And in this case, the district court found that because you had a convicted felon, as I said before, who was twice found with loaded stolen guns in his car. And, of course, in relation to this particular enhancement, it was used to commit the assault a couple months earlier, a victim to or the landlord or whatever you want to call them. And so similar questions as similarity with regard to regularity. What role does time play there? I mean, I'm assuming your answers may be similar also. They are similar. And obviously the sentencing court thought as much—excuse me, the Sentencing Commission thought as much too because it carved out temporal proximity as a separate factor or element or whatever you want to call it in relation to this analysis. Do you have regularity if it's 15 months later and 17 months later post? Well, I think it would depend on the judge. It would also depend on the facts. I mean, these are fact-intensive inquiries when you get—when you're looking at those particular components. Temporal proximity, perfect example. I believe it was the Rhine case where he was part of that big Fort Worth drug cartel. But they didn't have a—even though all these other informants ratted on him, there wasn't enough evidence to charge him. And he said, well, I was laying low at my mother's. And the government prosecutor tried to say, well, that's because everybody—all the big people were in jail or what have you. And that's fine. The court said, no, that's not enough because it was speculation. On the other hand, perhaps—it's obviously just hypothetical, but what if there had been indications or rumors that he had been trying to find new sources because his old sources were in prison or whatever? The court might find it there. But the facts that we have here are the facts that we have. And it's October—excuse me, October 2019. And the next time things start happening other than the December 20 indictment, federal indictment, pardon me, is the theft, Garcia's theft, in which there's no indication Lopez was present at the end of December 19. But we have Lopez assaulting the landlord, victim two, in January and then is arrested in March. And that's what we have. So address the standard of common scheme or plan. How do the facts here fit or qualify as a common scheme or plan? Well, common scheme or plan, the burden's a little higher. For the first one—excuse me, for the course of conduct, I believe it's significant. For common scheme, it's a substantial connection. It looks to the common accomplice's victims, purpose, modus operandi. And the district court in this case didn't really go to that, but of course this court could affirm on that. We know that the victims—certainly the victims are different. We don't know about any victims in October of 2019. The only accomplice we had was for the January assault. That's it. So that probably doesn't work either. The common purpose is a felon in possession who's riding around with a loaded gun doing who knows what. Is it for protection? Is it to commit another crime? I don't know, but we do know that that's problematic and that we do have that pattern. And that also feeds into the modus operandi as well, right? Because each time—these are not unloaded guns. They're stolen, loaded pistols each time, and he's caught with them. Does that answer your question? Well, we'll let you know. Good answer. So that's what you have in relation to the Schemer plan. But as I said before, the judge did look at the course of conduct. And there are some cases that say substantial, as I recall, for both, but plenty of other cases parse it out with significant versus substantial. But then, of course, the factors are very different. The common victims, what have you, versus similarity and whatnot. So unless the Court has any additional questions, I will yield the remainder of my time. Thank you, Ms. Wilson. Ms. Eastwood, you save some time for rebuttal. I have no rebuttal at this point. Thank you. All right. Thank you, Ms. Eastwood. And we notice that you're court-appointed, and we wish to thank you for being here.